**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| JOSEPH LEE VANDERHART, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:10-0492** |
| | ) | |
| CHARLES T. FELTS, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment (Document No. 12.), filed on June 9, 2011. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss. (Document No. 14.) On September 23, 2011, Plaintiff filed his Response in Opposition to Defendants' Motion. (Document No. 19.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be granted.

**PROCEDURAL HISTORY**

On April 16, 2010, Plaintiff, formerly an inmate at FCI Beckley,[1] and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and

---

[1] The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on August 20, 2010. Plaintiff was released from FCI Beckley on March 25, 2008, to serve the remainder of his sentence in a Residential Reentry Center.

civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[2] (Document No. 2.) Plaintiff named the following as defendants: (1) Charles T. Felts, Warden of FCI Beckley; (2) Dr. Dominic McLain, Clinical Director at FCI Beckley; and (3) Scotty Rose, Physicians Assistant. (<u>Id.</u>, p. 2.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference in providing treatment for his knee injury. (<u>Id.</u>, p. 3.) Plaintiff states that he injured his knee while playing basketball at MCC Chicago on November 21, 2004. (<u>Id.</u>, p. 4.) Plaintiff alleges that medical staff at MCC Chicago prescribed Motrin and a pair of crutches. (<u>Id.</u>) Prior to leaving MCC Chicago, a physician allegedly informed Plaintiff that he needed surgery. (<u>Id.</u>) Plaintiff arrived at FCI Beckley on November 10, 2005. (<u>Id.</u>, p. 5.) During the intake process, Plaintiff informed medical staff "that he had a severe knee trauma that occurred while at MCC Chicago that will require surgery." (<u>Id.</u>) Plaintiff contends that Defendants responded "that the most that can be done is we will give you some Motrin for pain and that the Plaintiff was not going to have any surgery done." (<u>Id.</u>) On January 10, 2006, Plaintiff reported to the medical unit complaining that his "knee felt like it was dislocated and twisted." (<u>Id.</u>, p. 5.) Plaintiff complains "an extremely poor and inadequate knee evaluation was conducted by Doctor Dominick McLain and Scotty Rose, who noted that no knee instability was detected." (<u>Id.</u>) Plaintiff states that "neither Dominick McLain nor Scotty Rose are qualified Orthopedic Specialist." (<u>Id.</u>) Plaintiff again reported to the medical unit on April 10, 2006, complaining of "chronic and extreme pain radiating from his knee." (<u>Id.</u>) Plaintiff alleges that he was inadequately evaluated by Defendant McLain and Rose, who determined that Plaintiff's knee was "sprained and did not require

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

either an MRI or an outside consultation with an Orthopedic doctor." (Id.) Following his release from FCI-Beckley, Plaintiff consulted with Robert L. DeMaagd, M.D., on April 21, 2008. (Id., p. 6.) Dr. DeMaagd allegedly determined that "Plaintiff's right knee had an anterior cruciate ligament tear with meniscus tear, which required surgery." (Id.) Plaintiff had surgery on May 30, 2008. (Id.)

Plaintiff, therefore, complains that Defendants violated his constitutional right to be free from cruel and unusual punishment by failing to provide adequate medical treatment. (Id., p. 7.) Plaintiff alleges that "had Defendants Dominick McLain and Scotty Rose provided proper medical care while evaluating plaintiff's injury, the fact that [Plaintiff had an anterior cruciate ligament tear with meniscus tear] would have been apparent; they instead opted to ignore this injury." (Id., p. 6.) Plaintiff further states that Defendant McLain and Rose "acted recklessly and negligently." (Id.) Plaintiff alleges that Defendants McLain and Rose provided inadequate medical care "while under the direct supervision of Charles T. Felts, the Warden of FCI Beckley." (Id.)

In support of his Complaint, Plaintiff filed the following Exhibits: (1) A copy of Plaintiff's Request for Administrative Remedy dated November 14, 2006 (Remedy ID. 434362-F1) (Document No. 7-2, p. 2.); (2) A copy of a "Receipt - Administrative Remedy" from the Administrative Remedy Coordinator at FCI Beckley dated November 21, 2006 (Remedy ID. 434362-F1) (Id., 7-2, p. 1.); (3) A copy of "Extension of Time for Response - Administrative Remedy" from the Administrative Remedy Coordinator at FCI Beckley dated December 13, 2006 (Remedy ID. 434362-F1) (Id., p. 3.); (4) A copy of Warden Charles T. Felts' Response dated December 21, 2006, denying Plaintiff's administrative remedy request (Remedy ID. 434362-F1) (Id., pp. 4 - 5.); (5) A copy of Plaintiff's Regional Administrative Remedy Appeal dated January 16, 2007 (Remedy ID. 434362-R1) (Id., p. 6.); (6) A copy of a "Receipt - Administrative Remedy" and "Extension of Time for Response - Administrative Remedy" from the Administrative Remedy Coordinator Mid-Atlantic Regional

Office dated February 12, 2007 (Remedy ID. 434362-R1) (Id., pp. 8 - 9.); (7) A copy of Regional Director K.M. White's Response dated March 20, 2007, denying Plaintiff's appeal (Remedy ID. 434362-R1) (Id., p. 7.); (8) A copy of Plaintiff's Central Office Administrative Remedy Appeal dated April 13, 2007 (Remedy ID. 434362-A2) (Id., p. 11.); (9) A copy of a "Receipt - Administrative Remedy" from the Administrative Remedy Coordinator Central Office date April 25, 2007 (Remedy ID. 434362-A2) (Id., p. 12.); (10) A copy of Administrator Harrell Watts' Response dated June 21, 2007 (Remedy ID. 434362-A2) (Id., p. 13.); (11) A copy of letter from Carol J. Cohron addressed to Mrs. Arnold Vander Hart dated July 16, 2007 (Id., pp. 15 - 16.); (12) A copy of Plaintiff's Inmate Request to Staff dated November 21, 2004, and December 7, 2004 (Id., pp. 17 - 18.); (13) A copy of pictures of Plaintiff's knee (Id., pp. 19 - 22.); (14) A copy of MRI images of Plaintiff's knee dated May 30, 2008 (Id., p. 22.); (15) A copy of the Surgeon's Notes dated April 21, 2008 and June 12, 2008 (Id., pp. 23 - 24.); (16) A copy of Grand Valley Surgical Center Procedure and Post Operative Notes (Id., pp. 25 - 34, 42 - 46.); (17) A copy of medical bills (Id., pp. 35 - 39.); and (18) The name and description of Plaintiff's prescribed medications (Id., pp. 40 - 42.).

By Order entered on March 7, 2011, the undersigned (1) granted Plaintiff's Application to Proceed Without Prepayment of Fees, (2) ordered the Clerk to issue Summonses upon Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure, and (3) ordered Plaintiff to serve the Summons and Complaint upon Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Document No. 8.)

On June 9, 2011, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 12 and 13.) In support of their

Motion, Defendants argue as follows: (1) Plaintiff failed to make proper service (Document No. 13, p. 4.); (2) Plaintiff failed to file an Administrative Tort Claim (Id., pp. 4 - 5.); (3) Plaintiff's Bivens claim is barred by the statute of limitations (Id., pp. 5 - 7.); (4) Plaintiff cannot establish deliberate indifference to his medical condition (Id., pp. 7 - 14.); (5) *Respondeat superior* and supervisory liability are inapplicable in a Bivens action (Id., pp. 14 - 16.); and (6) Defendants are entitled to qualified immunity (Id., pp. 16 - 19.). As Exhibits, Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 12-1.); (2) The Declaration of Dominick McLain (Document No. 12-2.); and (3) A copy of Plaintiff's medical records from FCI Beckley (Document No. 12-3.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 10, 2011, advising him of the right to file a response to the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 14.) On September 23, 2011, Plaintiff filed his Response in Opposition. (Document No. 19.) First, Plaintiff notes that he is acting *pro se* and "I am not exactly sure what proper service means." (Id., p. 2.) Next, Plaintiff states that he does not know why he would have to file an administrative tort claim. (Id.) Third, Plaintiff contends that his Bivens claim is timely because it was "not until April 21, 2008, while in the federal halfway house, that I was able to consult with an orthopedic surgeon to even prove my knee was as bad as it was." (Id.) Fourth, Plaintiff argues that Defendants were deliberately indifferent because "the denial of an MRI and the refusal to let me consult a specialist after such an injury alone is consciously reckless." (Id.) Fifth, Plaintiff asserts that his Bivens action against supervisory defendants is proper because "it was the only choice for federal defendants so I chose that one; again, I did this suite by myself and I believed Bivens was the way to go." (Id.) Sixth, Plaintiff claims that Defendants are not entitled to qualified immunity because "I listed each defendant in an

individual capacity." (Id.) Plaintiff contends that immunity does not allow defendants to "do whatever they want to inmates and not be held accountable." (Id.)

## **FACTUAL HISTORY**

Based upon a review of the record it appears that Plaintiff was incarcerated at FCI Beckley from November 10, 2005, through March 25, 2008. Plaintiff complains that Defendants failed to provide him with adequate medical treatment for his knee injury during his incarceration a FCI Beckley. During his "Inmate Screening" conducted on November 10, 2005, Plaintiff reported "chronic pain to right knee secondary to injury in November 2004." (Document No. 12-3, pp. 10 - 12.) Medical staff informed Plaintiff to "report to sick-call on Monday," November 14, 2005. (Id., p. 10.) Plaintiff, however, failed to report to sick-call on November 14, 2005.

On January 10, 2006, Plaintiff reported to Health Services complaining that his knee had dislocated. (Id., pp. 7 - 8.) Plaintiff explained that "his foot got caught on a step and he got his leg twisted which resulted in his right knee popping out of place. He states that his knee has popped out of place 7 to 8 times since his initial injury in 2004." (Id., p. 7.) Plaintiff further explained that the "pain was lateral initially but now it hurts more on the medial aspect." (Id.) Plaintiff stated that "he feels as if his knee is becoming less and less stable" and rated his pain as a 6 - 7 on a scale to 10. (Id.) Defendant Rose evaluated Plaintiff noting as follows: "ambulates with slight limp; no swelling or erythema noted to right knee; good range of motion; McMurrays Test negative without effusion; I do not detect any instability." (Id.) Defendant Rose requested an x-ray consultation, instructed Plaintiff concerning RICE (rest, ice, compression, and elevation) therapy, and ordered 7 days idle. (Id., pp. 8 and 13.) Defendant Rose prescribed Motrin 800 mg for pain and a neoprene immobilizer to assist with any instability of the knee. (Id., p. 7.) Plaintiff was instructed to follow-up at sick-call as needed. (Id.)

An x-ray of Plaintiff's knee was conducted on January 19, 2006. (Id., p. 13.) The x-ray report stated as follows: "Two views reveal minimal osteoarthritis involving the lateral compartment. There is no significant joint compartment narrowing. There is no evidence of an effusion. There is minimal calcification within the quadriceps tendon along the superior margin of the patella that could relate to chronic tendinopathy. The patella tendon is unremarkable." (Id.)

On April 2, 2006, Plaintiff reported to sick-call complaining that "my knee is blown out and it dislocated a few days ago. It has swelling and is getting worse." (Id., p. 3.) Plaintiff was evaluated by a Registered Nurse on that date and an appointment with a physician was scheduled for April 10, 2006. (Id.) On April 10, 2006, Plaintiff was evaluated by Defendant McLain. (Id., p. 2.) An examination of Plaintiff's knee revealed no effusion, the patella was movable without pain, and no medial or lateral instability was noted. (Id.) Defendant McLain noted that the x-ray revealed minimal osteoarthritis involving the lateral compartment with a question of chronic quadriceps tendinopathy. (Id.) Based on the x-ray and exam findings, Defendant McLain determined there was "no indication for an MRI at present." (Id.)

On March 8, 2007, Plaintiff reported to sick-call complaining of back spasms. (Id., p. 1.) Plaintiff was evaluated and prescribed Toradol and Motrin. (Id.) Plaintiff was instructed to use warm compresses and report to Health Services if the pain worsened or persisted." (Id.) Plaintiff was given 3 days idle. (Id.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129

S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554,

570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for

purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555,

127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the

District Court may not dismiss the Complaint with prejudice, but must permit the amendment.

Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### **Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Once the moving party demonstrates the lack of evidence to support the non-moving party's claims,

the non-moving party must go beyond the pleadings and make a sufficient showing of facts

presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106

S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the

light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the

claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary

judgment will be granted unless a reasonable jury could return a verdict for the non-moving party

on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will

support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**1.     Insufficient Service of Process:**

When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5),

the plaintiff has the burden of establishing that service of process has been effectuated in conformity

with Rule 4. See Wolfe v. Green, 660 F.Supp.2d 738, 750 (S.D.W.Va. 2009). When it is evident that

a party has failed to accomplish service of process pursuant to Rule 4, dismissal is in order. Federal

Rule of Civil Procedure 4(i)(1) - (3) states how a party must serve a Summons and Complaint upon

the United States, its agencies, corporations, officers or employees as follows:

> (1)     **United States.** To serve the United States, a party must:
> (A)(i)   deliver a copy of the summons and of the complaint to the United
> States attorney for the district where the action is brought – or to an
> assistant United States attorney or clerical employee whom the
> United States attorney designates in a writing filed with the court
> clerk – or
> (ii)   send a copy of each by registered or certified mail to the civil-
> process clerk at the United States attorney's office;
> (B)     send a copy of each by registered or certified mail to that Attorney
> General of the United States at Washington, D.C.; and
> (C)     if the action challenges an order of the non-party agency or officer of
> the United States, send a copy of each by registered or certified mail
> to the agency or officer.
>
> (2)     **Agency; Corporation; Officer or Employee Sued in an Official Capacity.**
> To serve a United States agency or corporation, or a United States officer or
> employee sued only in an official capacity, a party must serve the United
> States and also send a copy of the summons and of the complaint by
> registered or certified mail to the agency, corporation, officer, or employee

9

(3)     **Officer or Employee Sued Individually.** To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Federal Rule of Civil Procedure 4(e)[3] states a follows:

(e)     **Servicing an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual - - other than a minor, an incompetent person, or a person whose waiver has been filed - - may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Federal Rule of Civil Procedure 4(m) requires that service of a summons and complaint be made upon a defendant within 120 days of the filing of the complaint. Dismissal of the complaint without prejudice is required upon the plaintiff's failure to accomplish service of process within 120 days unless the plaintiff can show good cause why service was not made within that period. Additionally, when the United States, its agencies, officers and employees are defendants, Federal Rule of Civil

---

[3] Rule 4(f) provides for service of an individual in a foreign country and Rule 4(g) provides for service of a minor or incompetent person.

Procedure 4(i)(4) allows for an extension of time to complete service of process when a party has failed to do so in certain respects as follows:

> The Court must allow a party a reasonable time to cure its failure to:
>
> > (A)    serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or
> >
> > (B)    serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

Defendants contend that "[n]o service has been made on the United States Attorney as required by Fed. R. Civ. P. 4." (Document No. 13, p. 4.) The record is void of any evidence that Plaintiff complied with Federal Rule of Civil Procedure 4(i) in serving the United States. The Court notes that Plaintiff must serve the United States when suing a United States officer or employee in their individual or official capacities. Although it is unclear from the record, the undersigned assumes that Plaintiff effectuated service upon the Attorney General of the United States or Defendants Felts, McLain, and Rose. Accordingly, it appears that the conditions specified in Rule 4(i)(4)(A) or (B) have been met and Plaintiff must be allowed a reasonable time to cure his failure to serve the United States. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment based upon insufficient service of process be denied.

**2.    FTCA Claim:**

**A.    Exhaustion of Administrative Remedies.**

In their Motion, Defendants contend that Plaintiff's FTCA claim should be dismissed based upon Plaintiff's failure to file an Administrative Tort Claim. (Document No. 13, pp. 4 - 5.) In Response, Plaintiff merely states that "I do not know why I would have to file a tort claim . . it

seems to be the same thing as what I am doing now." (Document No. 19, p. 2.)

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[4] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the

_____

[4] Title 28 U.S.C. § 2675(a) provides as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the FTCA. Plaintiff does not dispute that he failed to exhaust his administrative remedies. Additionally, Plaintiff fails to produce any documents indicating that he exhausted his FTCA claim.[5] Plaintiff merely states that he was unaware of the

---

[5] Exhaustion requirements concerning FTCA and *Bivens* actions differ. *See Davis v. United States*, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); *Murphy v. Inmate Systems Management*, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). For *Bivens* purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dale v. Lappin*, 376 F.3d at 655 (internal citations omitted); *also see Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. *Id.* Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. *Id.*, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. *Id.*, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. *Id.*, § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. *Id.*, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. *Id.*, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id.*, § 542.15(a). The entire process takes about

exhaustion requirement. Plaintiff's lack of knowledge, however, is no excuse for his failure to exhaust. See Rogers v. United States, 675 F.2d 123, 124 (6th Cir. 1982)(per curiam)(finding that plaintiff's lack of knowledge did not eliminate the jurisdictional requirement that a timely administrative claim be filed); Fuentes v. Parks, 2005 WL 911442, * 2 - 3 (S.D.N.Y. Apr. 18, 2005)(finding that even though plaintiff was proceeding *pro se*,  ignorance of the exhaustion requirement does not excuse the filing of a timely administrative claim). Accordingly, the undersigned recommends that Plaintiff's FTCA claim be dismissed for failure to exhaust.

**3.      Bivens Claim:**

    **A.      Statute of Limitations.**

A Plaintiff must file a Bivens action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective state's statutes of limitation. See Wilson v. Garcia, 471 U.S. 261, 266-69, 105 S.Ct. 1938, 1942-43, 85 L.Ed.2d 254 (1985). Under West Virginia law, the applicable period of limitation upon Plaintiff's right to file this civil action was two years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[6]

---

120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. *Id.*, § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. *Id.*, § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. *Id.*, § 542.17(c).

[6] West Virginia Code § 55-2-12 provides as follows:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Although the limitation period is borrowed from state law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting, Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Bivens action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

Federal Courts also apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law. Hardin v. Straub, 490 U.S. 536, 537-39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). In Irwin v. Dep't of Veteran's Affairs, 498 U.S. 89, 97, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990), the United States Supreme Court recognized that statutes of limitations in actions against the government are subject to a rebuttable presumption of equitable tolling. The Irwin Court stated that equitable tolling should apply in cases "where the claimant has actively

pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Id. Federal Courts have held that because the Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhaust the remedies. See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Brown v. Morgan, 209 F.3d 595 (6th Cir. 2000); Howard v. Mendez, 304 F.Supp.2d 632, 638 (M.D.Pa. 2004)(a Bivens case); Aguirre-Castillo v. United States, 2004 WL 594105 (N.D.Tex.)(a Bivens/FTCA case); Lopez v. S.C.D.C., 2007 WL 2021875 (D.S.C.)

In their Motion, Defendants argue that Plaintiff's Bivens claim should be dismissed as untimely. (Document No. 13, pp. 5 - 7.) Defendants contend that Plaintiff's incarceration at FCI Beckley ended on March 25, 2008, and "Plaintiff was required to bring any action against the Defendants for care which was rendered at FCI Beckley before March 25, 2010." (Id., p. 6.) In Response, Plaintiff contends that his cause of action did not accrue until April 21, 2008, the date he "was able to consult with an orthopedic surgeon to prove that my knee was as bad as it was." (Document No. 19, p. 2.)

In his Complaint, Plaintiff contends that Defendants acted with deliberate indifference to his knee condition during his incarceration at FCI Beckley from November 10, 2005, to March 25, 2008. (Document No. 2, p. 5.) Plaintiff states that upon his arrival at FCI Beckley on November 10, 2005, he informed medical staff "that he had a severe knee trauma that occurred while at MCC Chicago that will require surgery." (Id.) Plaintiff claims that Defendants acted with deliberate indifference by failing to order an MRI and failing to schedule an outside consultation with an orthopedic specialist. (Id.) Following his release from FCI-Beckley, Plaintiff consulted with Robert

16

L. DeMaagd, M.D., on April 21, 2008. (Id., p. 6.) Dr. DeMaagd allegedly determined that "Plaintiff's right knee had an anterior cruciate ligament tear with meniscus tear, which required surgery." (Id.)

Based on the foregoing, the undersigned concludes that Plaintiff's cause of action accrued no later than March 25, 2008, the date Plaintiff's incarceration at FCI Beckley ended. Plaintiff's claim that his cause of action did not accrue until the date he knew the extent of his injury (April 21, 2008) is without merit. Bohrer v. City Hospital, Inc., 681 F.Supp.2d 657, 666 (N.D.W.Va. Jan. 7, 2010)("The statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later.")(citing, Goodhand v. United States, 40 F.3d 209, 212 (7th Cir. 1994); also see CTS Corp. v. Mills Gap Road Association, 2011 WL 2118978, * 5 (W.D.N.C. Jan. 26, 2011)("It is clear that 'once any damages are known, the statute begins to run' and a plaintiff's ignorance of 'the precise extent of his injuries will not stop the running of the limitations period.'")(citations omitted). As stated above, a cause of action accrues when a plaintiff has knowledge of his claim or injury. In his Complaint, Plaintiff alleges that he was aware his knee condition would require surgery when he arrived at FCI Beckley on November 10, 2005. Clearly, Plaintiff was aware that Defendants failed to order any necessary tests or surgeries at the time of his release from FCI Beckley on March 25, 2008. Applying the West Virginia two-year statute of limitation, together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action expired on March 25, 2010, two-years from the date Plaintiff became aware of any injury resulting from Defendants' failure to provide appropriate treatment for his knee injury. Plaintiff filed his instant Complaint on April 16, 2010. Accordingly, the two-year statute of limitations has run as to Plaintiff's claim. The undersigned, therefore, recommends that Defendants' Motion to Dismiss,

or in the Alternative Motion for Summary Judgment (Document No. 12.) be granted. Notwithstanding the foregoing, the Court will briefly consider the merits of Plaintiff's <u>Bivens</u> claim.

### B.      No evidence of deliberate indifference.

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). <u>See also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), <u>quoting</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" <u>Id.</u> at 298, 111 S.Ct. 2321 (citing <u>Rhodes v. Chapman</u>, 452 U.S. at 347, 101 S.Ct.

2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for

19

defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

### (i)    Defendants McLain and Rose:

Plaintiff alleges that Defendants McLain and Rose acted with deliberate indifference in providing medical treatment for his knee condition. Defendants contend that Plaintiff cannot establish that Defendants acted with deliberate indifference to his medical condition. (Document No. 13, pp. 7 - 14.) Defendants first argue that Plaintiff's knee condition is not a serious medical condition. (Id., p. 8.) Specifically, Defendants state that "[c]hronic knee pain due to minimal osteoarthritis with a question of chronic quadriceps tendinopathy is not a serious medical need which would meet the objective component of the Eighth Amendment analysis." (Id.) Defendants explain that the "condition is an overuse condition where the attachment of the quadriceps tendon to the

20

upper pole of the patella (knee cap) becomes painful." (Id.) Furthermore, Defendants argue that even assuming Plaintiff's knee condition to be a serious medical condition, Plaintiff received timely and appropriate medical treatment. (Id., pp. 7 and 8 - 14.)

In Response, Plaintiff argues that Defendants were deliberately indifferent because "the denial of an MRI and the refusal to let me consult a specialist after such an injury alone is consciously reckless." (Document No. 19, p. 2.)

For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that he had recurrent knee dislocation and his knee condition caused continuous pain. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's knee condition was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants McLain and Rose acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendants acted with deliberate indifference in failing to order an MRI and not referring him to an outside physician for knee surgery. Plaintiff first notified medical staff at FCI Beckley of his knee condition on November 10, 2005, during his "Inmate Screening." (Document No. 12-3, pp. 10 - 12.) Medical staff instructed Plaintiff to report to sick-call on November 14, 2005, but Plaintiff failed to report to sick-call as instructed. (Id., p. 10.) On January 10, 2006, Plaintiff reported to Health Services complaining that his knee "popped out of place." (Id., pp. 7 - 8.) On the same day, Defendant Rose

evaluated Plaintiff noting "no swelling or erythema," "good range of motion," "McMurrays Test negative without effusion," and no instability detected. (Id., p. 7.) Defendant Rose requested an x-ray consultation, instructed Plaintiff concerning RICE therapy, ordered 7 days idle, prescribed Motrin 800 mg for pain, and ordered a neoprene immobilizer.(Id., pp. 7 - 8 and 13.) Approximately nine days later, an x-ray of Plaintiff's knee was conducted revealing "minimal osteoarthritis lateral compartment right knee" and "question of chronic quadriceps tendinopathy." (Id., p. 13.) On April 2, 2006, Plaintiff again reported to sick-call complaining that "my knee is blown out and it dislocated a few days ago."(Id., p. 3.) Plaintiff was evaluated by a Registered Nurse on that date and an appointment with a physician was scheduled for April 10, 2006. (Id.) On April 10, 2006, Defendant McLain examined Plaintiff's knee noting no effusion, the patella was movable without pain, and no medial or lateral instability. (Id., p. 2.) Based on the x-ray report and exam findings, Defendant McLain determined there was "no indication for an MRI at present." (Id.) Plaintiff failed to report any other complains concerning his knee to medical staff.

The Court finds that Defendants McLain and Rose did not act with deliberate indifference in providing medical treatment regarding Plaintiff's knee condition. Plaintiff made only two sick-call requests concerning his knee condition during his incarceration at FCI Beckley. Defendants examined Plaintiff's knee and provided treatment following each sick-call request. Specifically, Defendants ordered an x-ray, instructed Plaintiff's on RICE therapy, prescribed pain medication, and ordered a neoprene immobilizer. There is no evidence that Defendants McLain and Rose knowingly disregarded the need for an MRI or surgery. Although a community physician subsequently determined that surgery was warranted to treat Plaintiff's knee condition, the mere disagreement of opinions by physicians does not establish deliberate indifference. See Thomas v.

O'Haver, 142 F.3d 440, * 4 (7th Cir. 1998)(unpublished opinion)("Physicians will disagree about whether a particular course of treatment is appropriate, or even if treatment is appropriate at all, but a disagreement in treatment alone will not support a constitutional violation."); Hanson v. Smith, 9 F.3d 1557, * 2 (10th Cir. 1993)(unpublished opinion)("Even should medical opinions differ among prison doctors, such a difference of opinion does not support a claim of cruel and unusual punishment."); Cerilli v. Rell, 2010 WL 3827960, * 6 (D.Conn. Sept. 23, 2010)("Physicians can and do differ in their diagnoses and their determinations of the appropriate treatment for a particular patient, and the mere existence of a difference of opinion does not establish a claim of deliberate indifference."); Cole v. Goord, 2009 WL 1181295, * 8 n. 9 (S.D.N.Y. Apr. 30, 2009)(Plaintiff's "reliance upon the fact that subsequent medical providers have provided him with a different course of medication or treatment . . . does nothing to establish that [defendant] violated [Plaintiff's] Eighth Amendment rights.") Thus, Plaintiff appears to simply disagree with the appropriate course of treatment. An inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). The Court further notes an inmate is not entitled to the best possible care, only reasonable care. Geoff v. Bechtold, 632 F.Supp. 697, 698 (S.D.W.Va. 1986). Based on the foregoing, there is no indication that Defendants McLain and Rose knew of and disregarded an excessive risk to Plaintiff's health or safety. The undersigned, therefore, finds no evidence that Defendants McLain and Rose violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to Plaintiff's medical needs.

> (ii)    *Defendant Felts:*

Defendant Felts contends he is entitled to summary judgment because Plaintiff's claims

against him are improperly raised under the doctrine of *respondeat superior*. (Document No. 13, pp. 14 - 16.) Defendant Felts argues that "Plaintiff names Defendant Felts based solely on his supervisory position" and "has failed to set out specific facts of how Defendant Felts personally violated his constitutional rights." (Id., pp. 15 - 16.) In Response, Plaintiff argues that his Bivens action against supervisory defendants is proper because "it was the only choice for federal defendants so I chose that one; again, I did this suite by myself and I believed Bivens was the way to go." (Document No. 19, p. 2.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to Bivens . . ., a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001), cert. denied, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In a Bivens suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)). Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Id. at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was

24

deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. Id. A supervisor's mere knowledge of a subordinate's unconstitutional conduct is therefore not enough. Rather, Bivens liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." Ashcroft, 556 U.S. at ___, 129 S.Ct. at 1949.

Essentially, Plaintiff alleges that Defendant Felts violated his constitutional rights with respect to his failure to supervise employees. Plaintiff, however, has shown no personal involvement by Defendant Felts and the record does not indicate any personal involvement by Defendant Felts. In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D.Va. 1996). Non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier v. Born, 896 F.2d 848, 854 - 55 (4th Cir. 1990). There is no evidence that Defendant Felts was personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the prison physicians' conduct. Accordingly, Plaintiff has improperly raised his claim against Defendant Felts under the doctrine of *respondeat superior* and has failed to establish supervisory liability.[7]

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss or in the Alternative, Motion for

---

[7] The undersigned finds it unnecessary to address the remaining issues that Defendants have presented for dismissal of Plaintiff's claim.

25

Summary Judgment (Document No. 12.), **DISMISS** Plaintiff's Complaint (Document No. 2.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: February 15, 2012.

R. Clarke VanDervort
United States Magistrate Judge